UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION




| UNITED STATES OF AMERICA, Plaintiff, vs. BENTON LEO BRAVE HAWK, Defendant. | 3:15-CR-30090-RAL REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS |
|---|---|

Benton Leo Brave Hawk was reported to have had sex with his pre-pubescent "stepdaughter" on the Rosebud Indian Reservation. Federal and tribal agents interviewed him while he was in tribal jail and he made statements to them which he now seeks to suppress. Because the statements were lawfully obtained, the Court recommends that Brave Hawk's suppression motion be denied.

## BACKGROUND

Brave Hawk was arrested tribally and charged with sexually assaulting T.C.F., the 8-year-old daughter of his significant other. While in custody, Kory Provost, a special agent with the Rosebud Sioux Tribe, and FBI Special Agent Alicia Rowland, interviewed him. The interview lasted one hour and 14 minutes and was audio recorded.

Before any questioning took place, Agent Provost informed Brave Hawk of his *Miranda* rights from an advice of rights form. Brave Hawk initialed each of the rights on the form, acknowledging he understood them. At Agent Provost's request, Brave Hawk read out loud the waiver statement on the form. When asked if he agreed with this statement, Brave Hawk said, "Not really." Agent Provost then inquired whether Brave Hawk wanted to talk to the agents to which he replied, "I don't agree with it, but . . . ." In an attempt to discern Brave Hawk's intentions, Agent Provost followed up: "I mean, it's up to you. I can't make you, I can't make you do anything. It's up to you. It's your choice. These are your rights. Okay? So either you talk to us without a lawyer present, like it says, you can stop answering at any time. Or, or not." Without any verbal response, Brave Hawk took the form and printed his name beneath the statement he had just read. The agents then each signed the form and began conducting the interview.

Both the agents interrogated Brave Hawk. Despite telling them at the outset he was "tired" and only "somewhat" awake and being subjected to their deceptive tactics (about his DNA being on T.C.F.), Brave Hawk continued on with the interview – without ever requesting a break or to halt the same -- and steadfastly maintained he did not do anything of a sexual nature to the child.

Brave Hawk was indicted about two and-a-half weeks later and charged with aggravated sexual abuse of T.C.F. (two counts) and with child abuse of T.C.F. and her 10-year-old brother, T.F. (one count each). He thereafter moved to suppress his

statements, claiming they were elicited in violation of *Miranda*[1] and were involuntary under the Fifth Amendment to the United States Constitution.

The Government filed a response to the motion, resisting Brave Hawk's claims. An evidentiary hearing was held on December 30, 2015, at which Agents Provost and Rowland testified and four exhibits (including the recording and advice of rights form) were received into evidence. Brave Hawk is scheduled to stand trial on all four charges next month.

## DISCUSSION

### A. Right to Remain Silent

Brave Hawk initially claims that the statements he made to Agents Provost and Rowland should be suppressed because he invoked his Fifth Amendment right to remain silent. The recording indicates that after being Mirandized from a form and asked if he agreed with the waiver statement in the form, Brave Hawk responded "not really" and then said he did "not agree with it but . . . ." He argues that these utterances were sufficient as a matter of law to trigger his right to silence and cut off any questioning of him.

In the context of invoking the *Miranda* right to counsel, the Supreme Court has held that a suspect must do so "unambiguously."[2] If the suspect makes a statement

[1]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]*Davis v. United States*, 512 U.S. 452, 459 (1994).

concerning this right "that is ambiguous or equivocal" or makes no statement at all, police are not required to end the interrogation or ask questions to clarify whether the suspect wants to invoke his *Miranda* rights.[3]

According to the Court, "there is no principled reason to adopt different standards" for determining when a suspect invokes his *Miranda* right to remain silent.[4] Both, the Court has declared, "protect the privilege against compulsory self-incrimination,[5] by requiring an interrogation to cease when either right is invoked."[6]

A suspect thus who wants to invoke his right to remain silent and end an interview, must "do so unambiguously."[7] "Treating an ambiguous or equivocal act[ ] or statement as an invocation of *Miranda* rights 'might add marginally to *Miranda's* goal

---

[3]*Id.* at 459, 461-62.

[4]*Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010); *see also Solem v. Stumes*, 465 U.S. 638, 648 (1984) ("[M]uch of the logic and language of [*Michigan v. Mosley*, 423 U.S. 96 (1975)]" which discuss the *Miranda* right to remain silent "could be applied to the invocation of the [*Miranda* right to counsel]").

[5]*See Miranda*, 384 U.S. at 467-73.

[6]*Berghuis*, 560 U.S. at 381; *see also Mosley*, 423 U.S. at 103-04; *Fare v. Michael C.*, 442 U.S. 707, 719 (1979).

[7]*Berghuis*, 560 U.S. at 381; *see also United States v. Ferrer-Montoya*, 483 F.3d 566, 569 (8th Cir. 2007) ("A suspect invokes his right to remain silent by making 'a clear, consistent expression of the desire to remain silent.' Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right are not enough to invoke it for purposes of *Miranda*."); *Mann v. Thalacker*, 246 F.3d 1092, 1100 (8th Cir. 2001) ("Being evasive and reluctant to talk is different from invoking one's right to remain silent.").

of dispelling the compulsion inherent in custodial interrogation.'"[8] But full comprehension of the rights to remain silent and to counsel are sufficient to expel or at least neutralize whatever coercion is inherent in the interrogation process.[9]

Brave Hawk did not say that he wanted to remain silent, not talk to agents or answer questions. Had he made any of these simple, unequivocal statements (rather than cryptically divulging that he did not "really" agree with the waiver statement and that he did not agree with it "but"), he would have invoked his right to shut down all questioning. Because he did neither, there was no invocation of his right to silence and no "critical safeguard" for the agents to "scrupulously honor."[10]

In any event, Agent Provost handled the situation just as he should. He tried to ascertain whether Brave Hawk was exercising his *Miranda* rights by pointedly asking him whether he wanted to talk to the agents and stressing that this was up to him to decide. Agent Provost's tactics were not some contrived attempt to get around *Miranda* or the Fifth Amendment, but rather were aimed solely at clarifying what he perceived to be an ambiguous response to his waiver inquiries. He obviously knew that he and Agent Rowland could not talk to Brave Hawk if Brave Hawk wanted to remain silent or have counsel present. But Brave Hawk made it clear that he was willing to waive his

---

[8]*Berghuis*, 560 U.S. at 382 (*quoting Moran v. Burbine*, 475 U.S. 412, 425 (1986)).

[9]*See Berghuis*, 560 U.S. at 382; *Burbine*, 475 U.S. at 427; *see also Davis*, 512 U.S. at 460.

[10]*See Berghuis*, 560 U.S. at 381-82; *Davis*, 512 U.S. at 459, 461-62.

rights by taking the form – he had initialed and audibly read a minute or so earlier – signing the waiver portion of it, and then speaking with the agents – without talking to a lawyer or having one present – for over an hour. Finding nothing improper about what Agent Provost said or did,[11] Brave Hawk's motion, to the extent that it seeks

---

[11]*See Berghuis*, 560 U.S. at 381; *Davis*, 512 U.S. at 461-62; *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995); *see also United States v. Plugh*, 648 F.3d 118, 124-27 (2d Cir. 2011) (defendant's statement "I am not sure if I should be talking to you" and his refusal to sign the waiver of rights form not an unambiguous invocation of *Miranda* rights), *cert. denied*, 132 S.Ct. 1610 (2012); *United States v. Rodriguez*, 518 F.3d 1072, 1080 (9th Cir. 2008) ("Prior to obtaining an unambiguous and unequivocal waiver, a duty rests with the interrogating officer to clarify any ambiguity before beginning general interrogation."); *United States v. Ravensborg*, Crim. No. 13-194 (MJD/LIB), 2013 WL 5565891 at **2-4 (D. Minn. Oct. 8, 2013) ("Well, I have really nothing to say" not an unequivocal invocation of right to remain silent); *State v. Hampton*, 330 Wis.2d 531, 554-55, 793 N.W.2d 901, 912 (Wis. Ct. App. 2010) ("I really don't want to say nothing. . ." not sufficient to invoke right to remain silent), *review denied*, 332 Wis.2d 279, 797 N.W.2d 524 (2011); *State v. Blackburn*, 2009 S.D. 37, ¶13, 766 N.W.2d 177, 183 ("After an officer has informed a suspect of his *Miranda* rights and has determined that the suspect understands those rights, the officer must then determine if the suspect is willing to waive those rights and answer questions. If the suspect responds ambiguously or equivocally, the officer must then focus on clarifying the suspect's intent.") (*quoting State v. Tuttle*, 2002 S.D. 94, ¶14, 650 N.W.2d 20, 28); *Pena v. State*, 98 P.2d 857, 862-68 (Wyo. 2004) (answer of "not really" to question "Do you wish to talk to us?" deemed ambiguous, so as to permit officers to continue questioning "until they had clarified if Pena truly was invoking his right to silence"); *State v. Leyva*, 951 P.2d 738, 740, 743-44 (Utah 1997) (officer did not act improperly when after defendant said "I don't know" in response to whether he would waive his right to silence, officer then advised defendant again he did not have to talk after which defendant indicated his understanding by nodding and answered the first question asked, manifesting a waiver of his rights); *see generally* 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, *Criminal Procedure*, §6.9(g) (3d ed. & 2014-15 Supp.) ("police efforts at clarification remain a *permissible* course of action in cases of actual ambiguity [of the right to silence]").

suppression under *Miranda* based on an invocation of his right to remain silent, cannot be sustained.

**B. Waiver**

Brave Hawk next claims that his *Miranda* waiver was invalid. He asserts that he did not knowingly, voluntarily and intelligently waive his rights.

It is undisputed that Agent Provost informed Brave Hawk of his *Miranda* rights before any questioning took place and that Brave Hawk waived these rights by executing the advice of rights form. The issue here is whether the waiver was a knowing, voluntary and intelligent one.[12]

The *Miranda* waiver inquiry has "two distinct dimensions": the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and the waiver must be made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[13] The totality of the circumstances are to be considered when determining whether a suspect's waiver is valid.[14]

---

[12]*See Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir.), *cert. denied*, 546 U.S. 1039 (2005).

[13]*Berghuis*, 560 U.S. at 382 (*quoting Burbine*, 475 U.S. at 421).

[14]*See Burbine*, 475 U.S. at 421.

The recording, irrefutably shows that Brave Hawk waived his *Miranda* rights. There is no basis to conclude that he did not understand his rights. It therefore follows that he chose not to invoke or rely on them when he spoke to the agents.

First, credible evidence proves Brave Hawk was both mindful and appreciative of his rights and what he was doing.[15] He was read and acknowledged – through his seven sets of initials on the advice of rights form – understanding each of his rights, including his right to remain silent and to stop answering questions at any time.

Second, Brave Hawk's written waiver constitutes potent evidence he had a clear understanding of his rights and gave them up.[16] And his willingness to engage in a colloquy without the benefit of a lawyer and make statements – some of which were incriminating – was a "course of conduct indicating waiver" of his rights.[17] If Brave Hawk wanted to remain silent, he could have said nothing in response to the agents' questions, or he could have unambiguously invoked his *Miranda* rights and terminated the interrogation. The fact that he chose not to and elected instead to converse with the agents by himself for 70 plus minutes is indicative of a full-fledged waiver.[18]

---

[15] *See Berghuis*, 560 U.S. at 385-86; *Burbine*, 475 U.S. at 421.

[16] *See Butler*, 441 U.S. at 373.

[17] *See Berghuis*, 560 U.S. at 386; *Butler*, 441 U.S. at 373.

[18] *See Berghuis*, 560 U.S. at 386.

Third, there is no credible evidence Brave Hawk's statements were coerced.[19] At no time did the agents threaten or intimidate Brave Hawk, or yell, raise their voices, or become hostile toward him. Nor did they use any force, employ physical punishment, brandish their weapons or use rubber hose tactics to get him to talk. Brave Hawk's age, education, background and conduct that day did not indicate he was low functioning or particularly suggestable and vulnerable to questioning by authority figures. His responses to inquiries also convincingly showed he was not under the influence of alcohol or drugs and not suffering from any mental or physical afflictions. And he cooperated with the agents, talking on end with them at times, without being questioned.

Brave Hawk contends that his tired and sleepy condition rendered his waiver invalid. Although the recording indicates he yawned on 12 occasions while speaking with the agents, being fatigued and drowsy do not necessarily render a waiver involuntary.[20] Rather, the test is whether a suspect's condition "caused [his] will to be overborne."[21]

---

[19]*See id.* (*citing Burbine*, 475 U.S. at 521); *Colorado v. Connelly*, 479 U.S. 157, 163-67 & nn. 1,2 (1986).

[20]*See United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir.) (*citing United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990)), *cert. denied*, 555 U.S. 1019 (2008); *United States v. Pape*, 917 F.Supp.2d 888, 896-98 (D. Minn. 2013); *United States v. Fast Horse*, CR. 12-30034-RAL, slip op. at 3 (D.S.D. July 24, 2012).

[21]*Gaddy*, 532 F.3d at 788; *Casal*, 915 F.2d at 1229.

While Brave Hawk did say he was tired, somewhat awake and yawned periodically, he never asked to stop the interview or provided any indication he was too languid to go on. Other than his statements (made very early on to the agents) and open mouth inhalations (which may have been an involuntary reaction to being bored), Brave Hawk points to nothing in the record evincing that he was in a state of exhaustion and sleep deprivation so severe his will was overborne. Notably, courts in this Circuit have upheld the validity of waivers made under circumstances much more extreme than those found in this case.[22] Regardless, "[e]ven if a suspect has a somewhat diminished capacity to resist coercion due to a mental defect . . . a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion."[23] There is no such evidence here.

---

[22]*See e.g. Gaddy*, 532 F.3d at 786 (defendant's waiver of his *Miranda* rights was valid because he appeared awake and coherent and did not tell officers he was tired or intoxicated, even though he had not slept the night before and had consumed pain relievers, muscle relaxants, alcohol, marijuana and cocaine within 24 hours of executing the waiver); *Casal*, 915 F.2d at 1229 (defendant, who had recently used methamphetamine and had not slept for five days, was capable of making a voluntary statement where police testified they were unaware of these impairments and he did not appear to be intoxicated); *Pape*, 917 F.Supp.2d at 897 (in the absence of statements that defendant was too tired to continue the interview, his mere yawning on a few occasions did not establish that his statements were involuntary under the totality of the circumstances present); *United States v. Mims*, 567 F.Supp.2d 1059, 1080-81 (D. Minn. 2008) (defendant never mentioned that he was too tired to continue the interview and while he yawned and stretched occasionally during the same, it was apparent he was coherent and in control of his faculties)

[23]*United States v. Vinton*, 631 F.3d 476, 483 (8th Cir.), *cert. denied*, 132 S.Ct. 213 (2011); *United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995).

This is not one of those isolated situations in which a suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with probing agents and incriminate himself. In the final analysis, Brave Hawk's statements were made voluntarily and with a full awareness of his rights, including his right to remain silent.[24]

**C. Voluntariness**

"Cases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that law enforcement authorities adhered to the dictates of *Miranda* are rare."[25] Brave Hawk nevertheless claims that the use of deception during the interview, when combined with his condition, resulted in him making involuntary statements.

Due process requires guilt-laden statements or "confessions" be voluntary.[26] A statement is voluntary if it is "the product of an essentially free and unconstrained

---

[24]*See Berghuis*, 560 U.S. at 382-89; *United States v. Morgan*, 729 F.3d 1086, 1092 (8th Cir. 2013); *Vinton*, 631 F.3d at 483; *Fast Horse*, slip op. at 2-5; *United States v. Allman*, CR. 12-30056-RAL, 2012 WL 3190780 at **4-5 (Aug. 3, 2012); *United States v. Abernathy*, CR. 11-30042-RAL, 2011 WL 5403244 at *5 (D.S.D. Aug. 15, 2011), *report and recommendation adopted*, 2011 WL 5403223 (D.S.D. Nov. 8, 2011); *see also Plugh*, 648 F.3d at 127-28 (defendant knowingly and voluntarily waived his *Miranda* rights both expressly and through a course of conduct indicating waiver); *United States v. Oliver*, 630 F.3d 397, 409-10 (5th Cir.) (waiver of suspect's Fifth Amendment rights could clearly be inferred from his words and actions), *cert. denied*, 132 S.Ct. 758 (2011).

[25]*Dickerson v. United States*, 530 U.S. 428, 444 (2000) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20 (1984)).

[26]*See Brown v. Mississippi*, 297 U.S. 278, 285-86 (1936); *see also Schneckloth v.* (continued...)

choice by its maker."[27] Conversely, "[a] statement is involuntary when it [is] extracted by threats, violence or express or implied promises sufficient to overbear [the suspect's] will and critically impair his capacity for self-determination."[28] The same analysis concerning the voluntariness of the suspect's *Miranda* waiver applies in determining whether the suspect's statements were voluntary under the Fifth Amendment.[29]

The Court has already concluded that the overall atmosphere of the interview was not hostile or coercive and that Brave Hawk was not threatened or intimidated or promised anything. Whatever deception (regarding the existence of inculpatory DNA evidence) Agents Provost and Rowland may have utilized does not alter this conclusion.[30] The agents' fleeting employment of deceptive stratagems had no intrinsic effect on him.[31] He denied engaging in any sexual acts with T.C.F., insisting that

---

*Bustamonte*, 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect, but an involuntary one offends due process).

[27]*Schneckloth*, 412 U.S. at 225.

[28]*United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).

[29]*See Makes Room For Them*, 49 F.3d at 415; *Fast Horse*, slip op. at 5.

[30]*See State v. Lemoine*, 345 Wis.2d 171, 190-01, 827 N.W.2d 589, 598-99 (2013); *People v. Richardson*, 43 Cal. 4th 959, 993, 183 P.3d 1146, 1168 (2008), *cert. denied*, 555 U.S. 1177 (2009); *Nelson v. State*, 850 So.2d 514, 521-22 (Fla.), *cert. denied*, 540 U.S. 1091 (2003); *State v. Hall*, 148 N.H. 671, 673-74, 813 A.2d 501, 503-04 (2002); *Pierce v. State*, 761 N.E.2d 821, 824-25 (Ind. 2002)

[31]*See Fast Horse*, slip op. at 6.

nothing happened,[32] and even agreed to take a polygraph examination to prove his innocence.

At any rate, officers frequently use a variety of tactics when conducting interviews, including claiming not to believe a suspect's explanations, playing on the suspect's emotions, using the suspect's respect for his family against him, deceiving the suspect and conveying sympathy.[33] None of these tactics, however, render a confession involuntary unless "the overall impact of the interrogation caused [the suspect's] will to be overborne."[34]

The record as a whole plainly shows that Brave Hawk's statements were voluntary. They were ones he wanted to make and were not the product of any coercive environment and questioning that overwhelmed his faculties and acutely disabled his ability to resist the urge to confess.[35] This being the case, his statements may be used against him as substantive evidence at trial.

---

[32]*Id.*

[33]*United States v. Braveheart*, 397 F.3d 1035, 1041 (8th Cir. 2005); *United States v. Astello*, 241 F.3d 965, 967-68 (8th Cir.), *cert. denied*, 533 U.S. 962 (2001); *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir.), *cert. denied*, 510 U.S. 822 (1993).

[34]*United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011); *see also United States v. Aldridge*, 664 F.3d 705, 713 (8th Cir. 2011) (police-dominated atmosphere and use of deceptive interview tactics not enough to show that defendant's statement was involuntary).

[35]*See Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *Aldridge*, 664 F.3d at 713; *Braveheart*, 397 F.3d at 1041; *United States v. Petary*, 857 F.2d 458, 460-61 (8th Cir. 1988); *see also United States v. Poorman*, CR. 14-30101-RAL, 2015 WL 788050 at **4-5 (D.S.D. Feb. 24,

(continued...)

## CONCLUSION

Brave Hawk was advised of all of his *Miranda* rights, waived these rights without ever invoking them, and made unconstrained statements to Agents Provost and Rowland. Although he said he was tired, only somewhat awake and yawned a dozen times, he never requested a break or made any attempt to stop the interview because he was tuckered out or soporific. And the artifices the agents used did not sway Brave Hawk and make him admit to anything he did not want to. Because his statements were obtained in compliance with the edicts of *Miranda* and the Fifth Amendment, they are freely admissible as trial evidence.

## RECOMMENDATION

Accordingly, it is hereby

RECOMMENDED that Brave Hawk's Motion to Suppress Statements[36] be denied for the reasons, and based on the authorities, stated herein.

## NOTICE

The parties have 14 calendar days after service of this report to file their objections to the same.[37] Unless an extension of time for cause is obtained,[38] failure to

---

2015) (agent's deception did not overbear defendant's will and piercingly impair his decision-making capacity); *see generally*, 2 *Criminal Procedure*, §6.2(c).

[36]*See* Dkt. No. 24.

[37] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

file timely objections will result in the waiver of the right to appeal questions of fact.[39] Objections must "identify[] those issues on which further review is desired[.]"[40]

DATED this 12th day of January, 2016.

**BY THE COURT:**

Mark A. Moreno

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

[38]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[39]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[40]*Arn*, 474 U.S. at 155.